# Maddox *v*. Newton.

## *Libel and Slander.*

(Decided April 16, 1912. 58 South. 934.)

1. *Liberal and Slander; Joint Publication; Evidence.*—The evidence in this case stated and considered and held to justify the finding that Maddox aided and assisted his co-defendant in the publication of the article complained of, or procured them to do so, and was therefore, jointly liable with them.

[Maddox v. Newton.]

2. *Evidence; Res Gestae.*—Where a defendant was charged with having procured or induced the publication of a libelous article concerning plaintiff, evidence of all his acts tending to show what he did with reference thereto, both before and after the publication, constituting a part of one entire transaction was admissible.

3. *Appeal and Error; Harmless Error; Damages.*—Where plaintiff was entitleed to recover both nominal and punitive damages, and the court awarded only $600 as damages, such judgment was sufficiently small as a punishment to the defendant, and it was immaterial whether plaintiff was entitled to recover actual damages or not.

APPEAL from St. Clair Circuit Court.

Heard before Hon. J. E. BLACKWOOD.

Action by J. L. Newton against J. L. Maddox and others for libel and slander. Judgment for plaintiff and defendant Maddox appeals. Affirmed

M. M. and VICTOR H. SMITH, for appellant. If it can be said that the handing out of the papers by Maddox was a techincal publication, it was a separate and distinct publication from the publication of the paper, and would constitute a separate and distinct offense.—*Underwood v. Smith,* 42 Am. Rep. 946; *C. of Ga. Ry. Co. v. Shuttall,* 118 Ga. 865; *Fred v. Taylor,* 72 S. W. 868; *Randall v. Gardner,* 55 N. W. 843; *Wood v. Pranzdon,* 75 N. Y. 495. There was a fatal variance between the pleading and the proof.—*Harold Brothers v. Jones,* 98 Ala. 348; *B. R. L. & P. Co. v. Brown,* 152 Ala. 115. Very great strictness is required between the pleading and the proof in actions of this character.—*Lord v. Calhoun,* 50 South. 402; 4 Mayf. p. 64, and authorities cited. On the authorities above cited the court erred in the admission of evidence to the defendant's hurt. The court erred in awarding damages.—*Advertiser Co. v. Jones,* 53 South. 759; *Sloss-S. S. & I. Co. v. Dickens,* 52 South. 594; *Irby v. Wilde,* 150 Ala. 402.

J. P. MONTGOMERY and J. A. EMBRY, for appellee. No brief reached the Reporter.

DE GRAFFENRIED, J.—This suit was brought against J. L. Maddox, G. M. Howle, and J. T. Howle for $10,000 damages for falsely and maliciously publishing of and concerning the plaintiff, J. L. Newton, in the Register, a newspaper published at Birmingham, Ala., a certain article which, if false, was plainly libelous, with the intent to defame the plaintiff. When the case was called for trial, the defendants G. M. Howle and J. T. Howle failed to appear, and a judgment by default was entered against them with a writ of inquiry to ascertain the plaintiff's damages. The defendant Maddox (appellant here) pleaded "not guilty" to the complaint, the case was tried by the court without the intervention of a jury, judgment was rendered in favor of the plaintiff, and, under the evidence, the court ascertained the plaintiff's damages to be $600 and rendered judgment against all of the defendants for said sum. The defendant Maddox alone appeals.

1. It appears from the evidence, without dispute, that the plaintiff, Newton, and the defendant Maddox are brothers-in-law; that they reside in St. Clair county; that the defendants G. M. Howle and J. T. Howle reside in Jefferson county; that, when the libelous article which brought about this litigation appeared in the Register, that paper was published, not in St. Clair county, but in Jefferson county; that the defendants G. M. Howle and J. T. Howle were the proprietors and publishers of the paper and were liable jointly and severally for the publication of the article; and that the defendant Maddox had no interest in the paper whatever. It is claimed by the defendant Maddox that the evidence fails to show that he *connived at* or *aided* his codefendants in the publication of the article in the Register in *Jefferson* county; that all that he did was to deliver some of the copies of the paper containing the

libelous article to a few acquaintances in *St. Clair* county, *after* its publication in Jefferson county; and that therefore, as to him, there is a failure on the part of the plaintiff to sufficiently prove the allegations of his complaint. In other words, the defendant Maddox claims that if he is liable to the plaintiff at all he is liable, not because the article was published by his codefendants in the Register, but because *he* gave publicity to the Register containing the libel, *after* its publication, in the county of his residence, i. e., St. Clair county. Numerous authorities are cited by appellant's counsel in their brief to sustain the proposition that for two distinct publications of the same libel by different persons—while acting, of course, not in concert with each other—two actions must be brought, one for each publication.—*Monson v. Lathrop,* 96 Wis. 386, 71 N. W. 596, 65 Am. St. Rep. 54.

In our opinion, the evidence in this record justifies the inference that Maddox did, as claimed by the plaintiff, aid and assist his codefendants in the publication of the article in the Register, or that he procured them to do so. He and the plaintiff, as above stated, were brothers-in-law, having married sisters, daughters of a man named Jones. The girl named in the libelous article as having been debauched by the plaintiff was the adopted daughter of the father-in-law of Maddox and of the plaintiff. She had been raised and educated by the father-in-law and lived with him in the town of Odenville, St. Clair county. Maddox also lived in that town and was a merchant there. It is evident that the plaintiff also lived in Odenville or near there.

A day or two before the publication of the Register containing the libelous article, the defendant Maddox and the debauched girl went to Birmingham together on the same train. The girl was only 16 years old, and

we doubt if she had ever heard that there was such a paper in Birmingham as the Register. After reaching Birmingham, the couple were seen going together, on the afternoon before the publication of the paper, on the streets of Birmingham, in the direction of the Register's office. At a late hour on that same evening Maddox was seen on a street car and told an acquaintance that the plaintiff's picture would appear in the Register the next morning and said in addition, "see the Register in the morning, you will see how Jim Newton (the plaintiff) comes out." In this same conversation he also stated to the acquaintance that the girl had gone to the rescue home. On the next morning the Register appeared, with the plaintiff's picture and with the libelous article. Maddox returned to St. Clair county, and he had in his possession, in his store, a large package containing copies of this issue of the Register, some of which appear to have gone into the hands of citizens of Odenville from his store, and the evidence tends to show that he appeared upon the streets of that place with a number of the copies of the paper, and that he gave some of such copies to acquaintances, calling their attention to the article and asking them to read it. In addition to this, several citizens of Odenville and of that vicinity received copies of said paper through the mail, and they were not subscribers to the paper and had not been accustomed to receive it before that time. As there was evidence tending to show that the unfortunate girl was accompanied to Birmingham by Maddox; that he had accompanied her on the afternoon before the publication of the paper containing the picture of the plaintiff and the article referred to, to the office of that paper; that he knew before the paper was published that the picture and article would appear in the paper; that after the publication of the paper, and about that time, a bundle

of the copies of the paper containing the picture and the article was in the defendant's store in Odenville, where the public had access to such papers; that the defendant was seen on the streets of Odenville with copies of the paper upon his arm; that he gave some of such copies to acquaintances, asking them to read the article; and that the paper was mailed to various parties in St. Clair county who were not subscribers to it— taken all together, these facts furnished abundant evidence to justify the trial court in finding that the defendant Maddox was jointly liable with his codefendants for the publication of the article in the Register in Jefferson county. In fact, there is evidence from which the court had a right to find that Maddox instigated the publication. It is not unreasonable to infer from the testimony in the case that Maddox used his codefendants and the paper which they published as instruments to give wide publicity to the charges which some of the evidence tends to disclose existed as rumors in St. Clair county prior to the time the unfortunate girl went to Birmingham.

2. All of the evidence which the plaintiff introduced and to which the defendant excepted had a tendency, when read in connection with the acts of the defendant prior to the publication, to show that Maddox participated in the publication of the article in the Register in Jefferson county, and was therefore relevant. All the acts that the evidence tends to show that Maddox did with reference to the matter under discussion, both before and after the publication, are so interwoven with each other as to constitute parts of an indivisible whole and, taken together, constitute but one entire transaction.

[Maddox v. Newton.]

In addition to this, the plaintiff was entitled to recover, if the judge sitting as a jury thought the circumstances warranted it, punitive damages, and this evidence was relevant on the question of malice in the original publication vel non.

3.  It is claimed by the defendant Maddox that under the complaint and the evidence in the case the plaintiff was entitled to recover nominal and punitive damages (if entitled to recover at all), but that he was not entitled to recover actual damages.  We are not disposed to engage in a discussion with the appellant on that subject.  This suit is for damages for a heinous libel, which, according to the findings of the court (justified, as we have above stated, by the evidence), was published by the defendants against the plaintiff. This libel charged the plaintiff with an atrocious crime against the chastity of the adopted daughter of the plaintiff's father-in-law—a crime which this libel charges was accomplished by force, a crime against the character of the plaintiff.  The court gave judgment against the defendants for only $600.  Sufficient circumstances were shown by the evidence to justify the court in awarding punitive damages, and, under all the evidence, the judgment was sufficiently small as punishment to the defendants, without regard to the question of the amount, if any, of appellee's actual damages.

The judgment of the court below is affirmed.

Affirmed.